UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NORRIS WILLIAMS,
        Petitioner,

v.                              Case No. 2:15-cr-149-FTM-38MRM

UNITED STATES OF AMERICA,
        Respondent,
_____/

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES NOW the Petitioner, Norris Williams, and hereby files this Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, and as grounds, states the following:

## GROUND ONE

Petitioner was prejudiced in his Fifth and Sixth Amendment right to present a defense because trial counsel never gave Petitioner his complete discovery or documents pertaining to the charges filed.

Petitioner was indicted on numerous federal drug violations. Prior to going to trial, Petitioner was assigned an attorney from the Federal Public Defender's Office. However, there was a conflict of interest. Petitioner was assigned Attorney David J. Joffe, through C.J.A. appointment.

Upon meeting Attorney Joffe, Petitioner asked for his discovery and any other evidence being used against him. Attorney Joffe put Petitioner off, and kept reassuring Petitioner that he would only get twelve years if he went to trial. Petitioner again asked for the tapes pertaining to his arrest. Then Petitioner was offered the tapes to view, however, Petitioner told Attorney Joffe that the tapes were edited, and because the tapes were edited, Petitioner's Due Process rights were

violated.

The tapes the Petitioner was shown did not have the informants in them. When the Petitioner first meets Detective Gonzalez, the informant was present and Petitioner gave the drugs directly to the informant. The informant then gave the drugs to Detective Gonzalez. Had Petitioner had the opportunity to present the series of events that transpired it would have given Petitioner an opportunity to present that he was induced to commit the crime. Counsel violated Petitioner's Sixth Amendment right when he was not given a full, unobstructed opportunity to present his theory of defense to the jury and that form of deficient performance causes doubt in the outcome of the trial.

The standards of Effective Assistance of Counsel resting in the Sixth Amendment, provides in part, the right to effective assistance in all criminal prosecutions. See Yarborough v. Gentry, 540 U.S. 1, 5 (2003). *See also* Padilla v. Kentucky, 559 U.S. 356, 364 (2010). The Sixth Amendment right to counsel is the right to effective counsel. McMann v. Richardson, 397 U.S. 759, 771 (1970). Here Attorney Joffe failed Petitioner based on the standards of what the Sixth Amendment guarantees. Petitioner was arrested on crimes that, if properly investigated would show clear signs of inducement. The procedures used by Attorney Joffe before trial prejudiced Petitioner by not giving him an unobstructed chance to go to trial effectively. When Petitioner asked to see the evidence, he was shown edited tapes. Being shown edited tapes caused Petitioner to not fully understand the fact that he had a valid inducement claim of defense.

Petitioner's right to effective counsel was violated when Attorney Joffe advised the Petitioner would only receive 12 years if he had gone to trial was not only deficient performance. Courts have held that "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and

conscious choice between accepting the prosecution's offer and going to trial." Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008).

"To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984).

With that being said, the Petitioner exercised his right to go to trial, with Attorney Joffe's assurances that twelve years would be the sentence even after a trial.  This violated Petitioner's rights to an informed opinion of the risks and rewards of trial.  However, with the additional element that Petitioner never was able to make an informed decision on his theory of defense because he was not shown complete discovery, Attorney Joffe violated the Petitioner's Sixth Amendment rights per Strickland v. Washington, 466 U.S. 668 (1984), and Jae Lee v. United States, 137 S.Ct. 1958 (2017).

To choose to be represented by effective counsel, "a defendant need not surrender control entirely to counsel. For the Sixth Amendment, in "grant[ing] to the accused personally the right to make his defense," "speaks of the 'assistance' of counsel, and an assistant, however expert, is still an assistant." Faretta v. California, 422 U.S. 806, 819–20 (1975); see Gannett Co. v. DePasquale, 443 U.S. 368, 382 (1979) (the Sixth Amendment "contemplates a norm in which the accused, and not a lawyer, is master of his own defense"). Trial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." Gonzalez v. United States, 553 U.S. 242, 248 (2008) (internal quotation marks and citations omitted)." McCoy v. Louisiana, 138 S.Ct. 1500, 1508 (2018).

Petitioner stated he was induced. Had Petitioner been able to show the evidence to the jury, with the assistance of counsel who built and buttressed such a defense, it would have given the Petitioner the ability to build his theory of defense. McCoy gives defendants the right to their theory of defense. Petitioner prays that this Court grant this ineffective claim and order a new trial based on the above.

## GROUND TWO

Petitioner's Fifth Amendment Due Process Rights were violated when he was not given the inducement instruction. Petitioner's Fifth Amendment Due Process Rights were violated when Petitioner requested a jury instruction on inducement when the circuit precedent authorizes Petitioner the ability to present the Inducement Instruction:

"It is elementary law that the defendant in a criminal case is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence," United States v. Ryan, 289 F.3d 1339, 1344 (11th Cir. 2002).

There was evidence of police misconduct that supported the inducement instruction. The evidence showed that Detective Chica actually gave Petitioner a sample of the drugs that were the *res gestae* of the transaction. It is plainly obvious that giving a sample of a dangerous drug to a suspected drug dealer could lead to that drug dealer giving or selling that dangerous drug to unwitting drug purchasers. If something were to go wrong, and something going wrong is certainly foreseeable, the dangerous drugs at issue would have come directly from a narcotics detective to the streets. Putting drugs onto the streets is not legitimate police activity and this behavior shocks the conscious.

The factors the court should examine in examining whether the defense instruction for governmental inducement are "(1) whether the requested instruction is a substantially correct statement of the law; (2) whether the jury charge given addressed the requested instruction; and

(3) whether the failure to give the requested instruction seriously impaired the defendant's ability to present an effective defense," Id. at 1345, *quoting* United States v. Chirinos, 112 F.3d 1089, 1101 (11th Cir. 1997).

Petitioner humbly requests to clarify the above proof of availability for each section step-by-step, because the burden of proof rests on defendant. "The Court is also obliged to view evidence in a light most favorable to the accused." United States v. Williams, 728 F.2d 1402, 1404 (11th Cir. 1984).

### **Whether the Requested Instruction is a Substantially Correct Statement of the Law**

Here, Petitioner was induced to purchase a kilogram of heroin. At trial, Detective Gonzalez testified that "the buyer determines the amount of drugs purchased not the seller" DE#89:196.

Government inducement requires an element persuasion or coercion and this may be shown if defendant "demonstrates that he had not favorably received the government plan, and the government had to "push it" on him…." Ryan, 289 F.3d at 1344. Here, Petitioner, on numerous occasions told Detective Chica he was not interested in purchasing a kilogram. (DE#90:33-34). Detective Chica testified that the Petitioner did not have the money to purchase the heroin. (DE#90:33-34). Detective Chica also testified that he told Petitioner they were a Kilo organization. Petitioner then told Detective Chica that he would not do the deal. Then Detective Chica continued to call Petitioner over a three-to-four-month period.

In one phone call, Petitioner stated that he did not want what the government was selling. (DE: 90:51):

| | |
|---|---|
| Mr. Williams: | …can't take the whole one right now. I can't afford that to be honest…can't take the whole one. |
| Detective Chica: | Ok. |
| Mr. Williams: | I can't…I'll do the…the half one. |
| Detective Chica: | Where are you…how much are we talking? |

Mr. Williams:     $37,500 or whatever (Gov't exs.11A1, 11A1.1).

Petitioner called back insisting he did not have the available money for the initial kilogram, but then Detective Chica stated that Petitioner could purchase half a kilogram, but at a higher price of $40,000. (DE #90:57):

Mr. Williams:     I'm at a halftime. I ain't…I ain't at the whole…I ain't all the way there yet…I'm at a halftime…that's what I'm grabbing you know but that's what I'm…that's what I'm working with.

Then at Doc#90, at 73, Detective Chica told the Petitioner that he needed to come up with a reduced down payment of $50,000, down from the original $75,000. Petitioner has met the first requirement of obtaining a jury instruction of inducement when Detective Chica demonstrated the use of persuasion by telling the Petitioner that he needed to "come up" with more money, and when he engaged in reducing the price to make Petitioner purchase more than he wanted because it was at a drastically reduced price. . In this instance, it is clear that Petitioner has met the first prong based on this Circuit's precedent of United States v. Ryan.

**Whether the Jury Charge Given Addressed the Requested Instructions**

The jury charges that were given to the defendant violated Petitioner's Due Process rights because Petitioner was not able to fully develop his theory of the case defense. Here, the evidence is the record of Petitioner saying "no" the Detective calling Petitioner over a period of months telling him to come up with more money, and coercing Petitioner into believing that would be a better option. The government informant entices someone attempting to avoid narcotics not only into carry out an illegal sale but also into returning to the habit of use. The Petitioner was previously convicted of narcotics violations then presented with an option in which he said "no" on numerous instances. The first instance (DE#90:51): "I can't take a whole one right now...I

can't...I'll do the half a one." Inducement is fulfilled when there is a scintilla of evidence that there existed governmental inducement of the crime and a lack of predisposition on the part of the defendant to engage in the criminal conduct. <u>Sherman v. United States</u>, 356 U.S. 369, 376-78 (1958).

Here, Petitioner prays this Court grants this ground because of the fact that Petitioner did not want to purchase the amount of drugs offered and that he was induced to purchase the kilogram, and thus, the Petitioner was entitled to an instruction on any recognized defense for which there exists evidence to rely upon. <u>Stevenson v. United States</u>, 162 U.S. 313 (1896).

### <u>Whether the Failure to Give the Requested Instruction Seriously Impaired the Defendant's Ability to Present an Effective Defense</u>

When the jury was not instructed on Inducement, this prejudiced Petitioner because all the evidence of inducement was proven. To receive an inducement instruction, the defense must make a showing that the agents used mild coercion or persuasion. It is evident from the record. Petitioner prays that this court grant this ground, vacate his sentence and order a new trial.

### <u>GROUND THREE</u>

Defense counsel was ineffective when counsel did not object to the introduction of testimony related to the chemical analysis and weight of the drugs at issue.  The Confrontation Clause found in the Sixth Amendment to the Constitution is offended when the Defendant is unable to confront and cross-examine witnesses against him.  The Sixth Amendment's Confrontation Clause gives the accused "[i]n all criminal prosecutions, ... the right ... to be confronted with the witnesses against him." This was violated in this case.

In <u>Crawford v. Washington</u>, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177, the Court held that the Clause permits admission of "[t]estimonial statements of witnesses absent from trial ... only where the declarant is unavailable, and only where the defendant has had a prior

opportunity to cross-examine."

In Melendez–Diaz v. Massachusetts, 557 U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314, the Court declined to create a "forensic evidence" exception to *Crawford,* holding that a forensic laboratory report, created specifically to serve as evidence in a criminal proceeding, ranked as "testimonial" for Confrontation Clause purposes. Relying upon Crawford and Melendez-Diaz, the Court decided Bullcoming v. New Mexico, 564 U.S. 647, 131 S.Ct., 2705, 180 L.Ed.2d 610 (2011).

In Bullcoming, the United States Supreme Court held that the Confrontation Clause barred the admission of a blood alcohol level test where the certifying analyst did not testify and the government instead relied on the testimony analyst familiar with the forensic procedures. Counsel was deficient when he allowed the testimony of the analyst, Agent Strang, who did not actually conduct the testing.  By not objecting and forcing the Government to produce the actual analyst, Petitioner was foreclosed from challenging the testimony regarding the analysis, the weight, and the purity of the drugs at issue.

### **GROUND FOUR**

Counsel was ineffective for failing to argue that Petitioner did not have two prior convictions to support an enhanced sentence under the career offender guidelines pursuant to USSG § 4B1.1(a).

Under USSG § 4B1.1 (a), a defendant may be classified as a career offender only if:

1.  The defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction.
2.  The instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense.
3.  The defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

In this case, Counsel's performance fell below a reasonable standard, where Counsel failed to object on the ground that Petitioner's prior federal conviction for conspiring to violate Title 21 U.S.C. § 841(a) in Case no. 2:00-cr-37-FTM-29 and his prior sale of cocaine convictions in Florida state court for violations of Fla. Stat. § 893.13 committed between June 3-5, 1999, were not separate offenses separated by intervening arrests as defined within USSG § 4A1.2 (a) (2).

USSG § 4A1.2 (a) (2), prior offenses are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense).  This did not occur here.

Prior offenses are considered related if they result from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan or (C) were consolidated for trial or sentencing. USSG § 4A1.2 cmt. n.3. The state drug convictions from June 3 to June 5, 1999 were part of the single common scheme or plan, which was the federal conviction for conspiracy.

The 11th Circuit has long held that if the prior convictions result from acts forming a single criminal episode, then the prior conviction should be treated as a single conviction for sentence enhancement under Section 841(b)(l)(A). United States v. Rice, 43 F.3d 601, 605 (11th Cir. 1995).

Here, Petitioner's prior offenses were acts forming a single criminal episode, forming a single conviction, where the prior § 841(a) conspiracy offense commenced on January 3, 1993 and ended on April 16, 2000, and the two Fla. Stat. § 893.13 sale of cocaine offenses occurred on June 3, 1999 and June 5, 1999.  These state drug convictions were a part of the ongoing § 841(a) drug conspiracy that did not end until April 16, 2000. This is true, where the original Presentencing Report prepared in the § 841(a) case (case no. 2:00-cr-37-FTM-29), at 47 and 48 provides that the cases were related for the reasons as follows:

Pursuant to USSG § 1B1.3 comment (n.9), the defendant's conduct in the above conviction is considered part of the same course of conduct as the offense of conviction. Therefore, the defendant's conviction is not considered as a "prior sentence" under USSG § 4A1.2(a) (1) and is not scored when considering USSG § 4A1.1.

See PSR at 47 and 48.

Finally, the very terms of § 4B1.2 (c) determines that the two prior convictions, to be two separate conviction under the rule, in relevant part, must be "counted separately under the provisions of §4A1.1 (a), (b), or (c)."

Thus, because the Petitioner does not have at least two prior § 4B1.1 predicate offenses, counsel's failure to challenge the applicable guidelines range resulted in the Petitioner being sentenced under a higher, incorrect guidelines range which violated Petitioner's substantial rights. Molina-Martinez v. United States, 136 S.Ct. 1338, 1349 (2016) (holding that a defendant sentenced under an incorrect Guidelines range can rely on that fact to show a reasonable probability that the court would have imposed a different sentence under the correct range, so as to establish an effect on substantial rights); Bates v. United States, 649 F.App'x 971 (11th Cir. 2016) (finding that, pursuant to the rule in Molina-Martinez, trial counsel's performance was deficient and affected Bates' substantial rights because there was a reasonable probability that, had her counsel objected, she would have received a different sentence).

Here, the Petitioner was prejudiced from counsel's deficient performance and such performance violated Petitioner's substantial rights. Absent the erroneous career offender statute, the Petitioner's correct guidelines range would have been a base offense level of 30 with a criminal history category of III, yielding a guideline sentencing range of 121-151 months imprisonment.

As a result, Petitioner's 360-month term of imprisonment based on an incorrect career offender status should be vacated and he should be resentenced with the assistance of effective

counsel.

Recently, the United States Supreme Court has set a standard for determining whether a defendant's substantial rights are violated. Molina-Martinez, 136 S.Ct. at 1349 (a defendant sentenced under an incorrect guidelines range can rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under a correct range: so as "to establish an effect on substantial rights."  Following Molina-Martinez, the Eleventh Circuit has extended that decision to claims of ineffective assistance of counsel. Bates, 649 F.App'x at 976 ("in light of Molina-Martinez, we conclude that trial counsel's deficient performance affected Bates' substantial rights because there was a reasonable probability that, had her counsel objected, she would have received a different sentence").

Here, Petitioner's substantial rights were violated in accord with Molina-Martinez. Had counsel made the appropriate objections to the career offender classification, Petitioner's guidelines range would have been far less. Specifically, had counsel made the appropriate objections, Petitioner's correct base offense level would have been 30, with a criminal history category of II which produces an ultimate guideline sentencing range of 121-151 months imprisonment.

As a result, the Petitioner should be resentenced with the assistance of effective counsel. Petitioner's sentence of 360 months is not only unreasonable it serves as a powerful indictment against our system of justice, because petitioner's Due Process rights have been violated at sentencing and the sentence should be vacated as that would be the appropriate remedy for relief. Recent Supreme Court precedent Rosales-Mireles v. United States clarifies what is established in United States v. Olano as the "fourth prong." As long as the following three conditions are met: "(1) the error was not 'intentionally relinquished or abandoned,' (2) the error is plain, and (3) the

error 'affected the defendant's substantial rights,'" the Court states it is well established that courts 'should correct a forfeited Plain Error that affects substantial rights' if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." <u>Rosales-Mireles</u>, 138 S.Ct. 1897, 1901 (2018).

When there is any miscalculation in the guideline calculations, it must be corrected, and if it is not, grave miscarriages of justice can occur.  The district court has the ultimate responsibility to ensure that the guidelines range it considers is correct, and the failure to calculate the correct guidelines, range constitutes procedural error. <u>Id.</u> at 1904. Petitioner prays that this court vacate the judgment pertaining to the Career Offender enhancement and resentence Petitioner with the correct guidelines.

## **<u>GROUND FIVE</u>**

Trial counsel provided ineffective assistance of counsel where counsel failed to argue that conspiring to violate Title 21 U.S.C. § 841(a) violates the Fifth Amendment's Due Process Clause as being unconstitutionally vague and therefore cannot be considered as a federal felony offense as defined within USSG § 4B1.1

The Fifth Amendment Due Process Clause has long held that no person shall be "deprived of life, liberty, or property, without due process of law". See U.S. Constitutional Amend V.

Convicting a defendant for conspiracy to possess with intent to distribute a controlled substance in violation of Title 21 U.S.C. §§ 841(a) and 846, violates these core principles which is protected under the Due Process Clause of the United States Constitution.

Specifically, conspiring to violate § 841(a) is unconstitutional as that statute is vague, where those statutory provision provides no punishment for violating the statute. In support of this argument, the Petitioner will point to the oral arguments in <u>Edwards v. United States</u>, 96-8732

(S.Ct.), held before the United States Supreme Court on February 23, 1998, in an exchange involving Solicitor General Edward C. DuMont and the late Justice Antonin Scalia regarding the lack of a penalty provision within § 841(a). The exchange went as follows:

DuMont:   Now, Section 846, which is on page 1 and 2 of the appendix in the blue brief, says any person who attempts or conspires to commit any offense defined in this sub chapter shall be subject to the same penalties, and so on. The offenses are defined by the other sections in that portion of the United States Code. If you then look at § 841, which is the object defense here, § 841(a) defines the offense, and the ·offense is either possession or with the intent to distribute, or distribution--

J. Scalia:   Well, it can't define the offense if, indeed, as you just read, you are to be punished with the same penalties as those prescribed for the offense. There are no penalties prescribed for § 841(a). When you read § 841(a) you have no idea what the penalties are, so that cannot be the offense--

DuMont:   Well--

J. Scalia:   referred to in § 846.

DuMont:   Well, with respect, we would obviously disagree with that. What you know from § 846 is that you're looking for an object offense. The object offense is defined in § 841(a), which says, unlawful acts, except as authorized and so on you may not distribute, or possess--

J. Scalia:   Right.

DuMont:   with intent to distribute controlled substances.

J. Scalia:   Right, and if all I had before me was § 841, I would agree. But you have before you § 846, which you just read, which says attempts or conspires to defined in this chapter any person Who commit any offense shall be subject to the same penalties as those prescribed for the offense. There are no penalties prescribed for the offense of violating § 841(a).

DuMont:   Well--

J. Scalia:   I can read you § 841(a) and you can't tell me what penalty is prescribed for that.

DuMont:   Well, with respect--

J. Scalia:   You have to go down to (b) to figure it out.

DuMont:     With respect, I can, because what I'll say is, you look down to (b), which prescribes the penalties for the offense defined in (a).

J. Scalia:     Fine. I'm willing to accept (b). Then (b) becomes part of the offense.

DuMont:     We disagree about that.

J. Scalia:     That's fine.

See Oral arguments in Edwards v. United States, No. 96-8732 (S.Ct.), at pp. 26-28. The exchange taken before the Supreme Court makes clear that § 841(a) and § 841(b) are totally unrelated in defining offense elements. The Supreme Court has recently indicated that the "the core crime and the fact triggering the minimum mandatory sentence together constitute a new aggravated crime, each element of which must be submitted to the jury." Alleyne v. United States, 133 S.Ct. 2151, 2161 (2013). However, no court as of this date has taken such an approach. As a result, a conviction for conspiring to violate § 841(a) is unconstitutionally vague and can never be said to be a federal felony as defined within USSG § 4B1.1, when considering the offense elements alone. United States v. Lipsey, 40 F. 3d 1200, 1201 (11th Cir. 1994) ("(A) court should look at the elements of the convicted offense and not the conduct underlying the conviction when determining whether an offense can be considered to enhance a defendant's sentence under § 4B1.2 (2).

The Supreme Court has held that to determine whether an offense can be used to enhance a defendant's sentence, courts are limited to reviewing the elements of the offense. Descamps v. United States, 133 S.Ct. 2276, 2294 (2013), Mathis v. United States, 136 S.Ct. 2243, 2248 (2016). In Mathis, the court began its analysis by stating that "(t)o determine whether a prior conviction is for generic burglary (as defined under the ACCA) courts must apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of the generic burglary, while ignoring the particular facts of the case." Id. In order to resolve the sole question of whether a conviction under § 841(a) constitutes a federal felony offense as defined within § 4B1.1, this Court must ask whether the factors

contained within § 841(b) (i.e., drug type and quantity) are offense elements of § 841(a)? The simple answer is no they are not. This is so, where the Eleventh Circuit has long held that 21 U.S.C. § 841(b) only provides the penalties for 21 U.S.C. § 841(a), and becomes applicable only after a defendant is convicted of a substantive § 841(a) violation. United States v. Sanchez, 269 F.3d 1250, 1264-65 (11th Cir. 2001).

The Eleventh Circuit has further held that the nature and quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense." United States v. Baderas, 163 F. App'x 769, 782-83 (11th Cir. 2005) citing United States v. Williams, 876 F.2d 1521, 1525 (11th Cir. 1989) ("A violation of section § 841(a) occurs when the government proves beyond a reasonable doubt that a defendant possessed and intended to distribute a controlled substance regardless of whether the substance is cocaine or cocaine based"); United States v. Smith, 840 F.2d 886, 888 (11th Cir. 1984) (noting that the express language of § 841(a) puts no quantity requirement on the amount of controlled substance possessed); United States v. Simmons, 725 F.2d 641, 643 (11th Cir. 1984) ("The crime can be proved without any consideration of the amount involved"); United States v. Rutherford, 175 F.3d 899, 906 (11th Cir. 1999) (Concluding that to prove completely the elements of an offense under § 841(a), the government need not prove that a particular controlled substance was involved in the offense conduct. Under our constitutional jurisprudence, it is well settled has been long held that pursuant to the separation of powers, only Congress enjoys the power to define a crime and ordain its punishment.

In accord with United States v. Wright, 607 F.3d 708, 719 (11th Cir. 2010), it would violate the Separation of Powers to define § 841(b) as an offense element of § 841(a) and to ordain a punishment for § 841(a). United States v. Wiltberger, 18 U.S. 76, 95 (1820) ("It is the Legislature,

not the Court, which is to define a crime and ordain its punishment"). *See also* <u>United States v. Wright</u>, 607 F.3d 708, 716-17 (11th Cir. 2010) (Pryor, J., concurring) ("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested legislature, not the Court, which is to define a crime, and ordain its punishment"), *citing* <u>Wiltberger</u>, at 95; <u>United States v. McLean</u>, 802 F.3d 1228, 1230 (11th Cir. 2015) ("Congress - not the courts - crafts federal crimes by delineating the elements and prescribing punishment"), *citing* <u>Liparota v. United States</u>, 471 U.S. 419, 424 (1985) (explaining federal crime are "solely creatures of statute"). Thus, because the power to define criminal offenses and punishments belongs to Congress alone, any attempt to redefine § 841(a) beyond the definition given by Congress would implicate separation of powers. See <u>Whalen v. United States,</u> 445 U.S. 684, 689-90 (1980) (Consistent with the "constitutional principle of separation of powers, a defendant has a constitutional right to be deprived of liberty as punishment for criminal conduct only to the extent authorized by Congress"). Moreover, the bedrock principles that Congress and not the courts define federal crimes, applies equally to the substantive criterion for fixing penalties. In the federal system, defining crimes and fixing penalties must be left to the legislative branch of government and not judicial functions. <u>United States v. Evans</u>, 333 U.S. 483, 487 (1948). Thus, because Congress failed to create any penalty within the offense of § 841(a), this court may not now redefine § 841(a) as an offense punishable by one year or more (i.e., a federal felony) and such offense is unconstitutionally vague as a matter of law.

In a recent decision, Justice Gorsuch wrote in a concurring opinion that vague statutes threatens to transfer legislative power to law enforcement and prosecutors. <u>Sessions v. Dimaya</u>, 138 S.Ct. 1204, 1227-28 (2018) (Gorsuch, J., concurring) ("Vague laws also threaten to transfer

legislative power to police and prosecutors leaving to them the job of shaping a vague statute's contours through their enforcement decisions"), *citing* Grayned v. City of Rockford, 484 U.S. 104, 108-109 (1972) ("A vague law impermissibly delegates basic policy matters to policeman, Judges, and juries for resolution on ad hoc and subjective basis). Here, conspiracy to violate § 841(a) suffers from this same unconstitutional premise, given that the drug type and quantities listed in § 841(b) are not offense elements; Section 841(a) cannot provide the basis for imposing any punishment without violating the right to due process.

Given this conclusion, there appears to be only two ways to save the constitutionality of 21 U.S.C. § 841. The first way is to apply the traditional doctrine of severability to excise the unconstitutional portions of the statute and to retain those provisions that can survive. The second way is to become the pseudo-legislative branch of government by holding that § 841(b) is really an element of the offense, not a sentencing factor. Neither method, however, work in this instance, and therefore this Court should declare § 841 unconstitutional and to vacate Petitioner's conviction. Because § 841(a) is unconstitutional as previously interpreted, the question becomes whether some form of the statute may be upheld under the doctrine of severability. Specifically, "whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." Airlines v. Brock, 480 U.S. 678, 684 (1987) (citations omitted). A two-part inquiry governs the determination of whether unconstitutional provisions are severable. The first question is "whether the Act which remains after the unconstitutional provisions are excised is 'fully operative' [or] whether the unconstitutional provisions are 'functionally independent' from the remainder of the Act." Board of Natural Resources v. Brown, 992 F.2d 937, 948 (9th Cir. 1993). "Second, if the Act, absent the unconstitutional provisions, if fully operative as law, (the Court) then inquire(s)

whether Congress would have enacted the constitutional provisions of the Act independently of the unconstitutional provisions." Id.

In this case, the second prong of the inquiry is likely satisfied, as Congress clearly desired to proscribe the conduct prohibited by § 841(a). The first prong of the severability inquiry, however, cannot be satisfied because § 841(a) is not "fully operative" or "functionally independent" from § 841(b). Without § 841(b), § 841(a) does not set forth any penalties whatsoever. In essence, without § 841(b), § 841(a) constitutes crimes without a punishment. Indeed, without § 841(b), it would not even be clear whether § 841(a) was a felony or misdemeanor. Not only is the statute inoperative, it is also unconstitutional. See, e.g., United States v. Batchelder, 442 U.S. 114, 123 (1979) (stating that "it is a fundamental tenet of due process that 'no one may be required at peril of life, liberty · or property to speculate as to the meaning of penal statutes…. (V)ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute) (citations omitted).[1]

Moreover, this Court cannot attempt to uphold the statute under the doctrine of severability by attempting to guess what penalties Congress would have imposed if it had known that 841(a) was unconstitutional. Indeed, even if this Court has a good idea of what Congress may have had in mind when it passed the defective legislation, it cannot invent such anticipated penalties. The Supreme Court's decision in United States v. Evans, 333 U.S. 483, 486 (1948), a case presenting issues quite similar to the instant one, makes this clear. In Evans, the Supreme Court considered a statute that prohibited smuggling and harboring aliens and provided that violators of the law "shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine not

---

[1] United States v. Jackson, 390 U.S. 570 (1968), is not to the contrary. The Supreme Court held that the death penalty provision of the statute was unconstitutional, but "that the provision (was) severable from the remainder of the statute (and thus) there (was) no reason to invalidate the law in its entirety simply because its capital punishment clause violated the Constitution," at 572, see also 585-91. In Jackson, however, there was at least some penalty remaining in the statute after the unconstitutional portion was severed. In this instance, however, the remaining portion of the statute does not contain any pena1ty whatsoever and therefore cannot exist on its own.

exceeding $2,000 and by imprisonment for a term not exceeding five years for each and every

alien so landed or brought in or attempted to be landed or brought in." Id. at 484. Thus, the plain

language of the statute assigned maximum penalties for aliens harbored in the United States. The

defendant in that case was charged with harboring, not smuggling, and the district court granted

his motion to dismiss the indictment because the statute did not provide maximum penalties for

his offense. Id. The Supreme Court unanimously affirmed. As in this case, the Supreme Court in

Evans recognized that it was overwhelmingly clear that Congress intended to criminalize the

conduct at issue. Id. at 485. Nevertheless, the Supreme Court rejected the government's request "to

make (the statute) effective by applying one…. of the possibilities which seems most nearly to

accord with the criminal proscription and the terms of the penalizing provision." Id. The Supreme

Court refused to "plug the hole in the statute," concluding that "[t]his is a task outside the bound

of judicial interpretation. Id. at 487. It is better for Congress, and more in accord with its function,

to revise the statute than for us to guess at the revision it would make. That task it can do with

precision. We could do no more than make speculation law." Id. at 495.

     If the Supreme Court could not rewrite the relatively simple statute in Evans, this Court

certainly should not take the step of severing out the unconstitutional provisions in § 841(a) and

then rewriting the statute as a whole with invented penalties. As demonstrated by § 841(b), the

sentencing considerations in drug cases are extremely complicated and are best left for Congress.

In short, § 841(b) cannot be severed out, as the remaining portions of the statute are inoperative.

     As a result, when considering the offense elements alone, the Due Process Clause of the

Fifth Amendment will preclude the use of a conspiracy to violate § 841(a) as being considered a

federal felony offense to be defined within§ 4B1.1. Lipsey, 40 F.3d at 1201.

     To prevail on a claim of ineffective assistance of counsel Petitioner must show that: (1)

"counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). These two elements are commonly referred to as Strickland's performance and prejudice prongs. Reece v. United States, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). If a petitioner fails to establish the first Strickland prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel. Strickland, 466 U.S. at 697. To establish deficient performance, a petitioner must show "that counsel made error so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 677. Recently, the Supreme Court has held that "(C)ounsel's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance. Hinton v. Alabama, 571 U.S. 263, 274 (2014); *see also* Williams v. Taylor, 529 U.S. 362, 395 (2000) (holding that counsel provided ineffective assistance at sentencing because they failed to investigate records due to their mistaken understanding of state law on accessing such records); Griffith v. United States, 871 F.3d 1321, 1329-30 (11th Cir. 2017), *citing* Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999) ("Ignorance of well-defined legal principles is nearly inexcusable"). Here, counsel's performance fell below a reasonable standard and such performance was prejudicial to the Petitioner, where at the time of Petitioner's initial sentencing hearing, there was a well of established precedent that would have led to the conclusion that 21 U.S.C. § 841(a) and § 846 were unconstitutionally vague and could not therefore be considered a federal felony as defined within § 4B1.1. The failure to object to the erroneous § 4B1.1 guideline classification in this case constitutes ineffective assistance of counsel.

This Motion is made in good faith.

WHEREFORE, the Petitioner moves to vacate his conviction and sentence as outlined above.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 24th day of April, 2019, the foregoing notice was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all parties of record.

/s/ Robert P. Harris
Robert P. Harris
Florida Bar No. 97942
2052 Virginia Ave.
Fort Myers, Florida 33901
(239) 334-4343 Phone
(239) 334-4345 Fax
rharris@robertharrislawfirm.com